# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

KYLE DAVID COLARUOTOLO,

                              Plaintiff,

              - v -                                          Civ. No. 9:11-CV-720
                                                                  (GLS/RFT)

COUNTY OF SCHENECTADY, NEW YORK;
SGT. BARRON;[1] OFFICER HOWIE;[2] OFFICER SCHMIDT;
OFFICER GIMMETTE; OFFICER MARTIN;
OFFICER BUTTINGTIN;[3] OFFICER COONRAD;[4]
OFFICER HALL;[5] JOHN DOE #8; SGT. LABRAKE;
JANE DOE #1; and JOHN DOE #9,

                              Defendants.

**APPEARANCES:**                                    **OF COUNSEL:**

KYLE DAVID COLARUOTOLO
Plaintiff, *Pro Se*
43A Lindbergh Avenue
Albany, New York 12204

PHILLIPS, LYTLE LAW FIRM                            MARC H. GOLDBERG, ESQ.
Attorney for Served Defendants
Omni Plaza
30 South Pearl Street
Albany, New York 12207

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

---

[1] The correct spelling of this Defendant's name is "Varrone." Dkt. No. 25.

[2] "Officer Howie" is identified as "Howard Jones." Dkt. Nos. 16 & 19.

[3] The correct spelling of this Defendant's name is "Buffington." Dkt. Nos. 14 & 19.

[4] The correct spelling of this Defendant's name is "Coonradt." Dkt. Nos. 13 & 19.

[5] The correct spelling of this Defendant's name is "Hull," and we will refer to her as such, notwithstanding the fact that her Declaration, submitted in support of the Defendants' Motion for Summary Judgment, has the incorrect spelling. Dkt. Nos. 18, 19, & 29-15.

# REPORT-RECOMMENDATION and ORDER

## I. BACKGROUND

*Pro se* Plaintiff Kyle David Colaruotolo commenced this action on June 27, 2011, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his constitutional rights during his incarceration at the Schenectady County Jail from April 2009 through March 2010. Dkt. No. 1, Compl. At the time Plaintiff commenced this action, he was no longer incarcerated. *See id*. & Dkt. No. 2.

On November 22, 2011, the Honorable Gary L. Sharpe, Chief United States District Judge, performed an initial screening review of Plaintiff's Complaint, pursuant to 28 U.S.C. §§ 1915(e) and 1915A, and dismissed several claims and Defendants.[6] Dkt. No. 6. What survived this review were vague allegations, which were construed very broadly and interpreted as raising the following claims: (1) Eighth Amendment violation for Defendants' failure to protect Plaintiff from the sexual assault perpetrated upon him by another inmate, William Banks, on December 30, 2009; (2) Equal Protection violation for subjecting Plaintiff to intimidation and harassment and for failing to maintain a safe environment for him all on account of his sexual orientation; and (3) unspecified violations by the County of Schenectady due to its policies and procedures, or its gross negligence, or acquiescence or condonation of sexual harassment and assault of inmates. *Id*.

On October 19, 2012, Defendants filed and served a Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56, seeking dismissal of the action. Dkt. No. 29. A

---

[6] Specifically, Chief Judge Sharpe found that Plaintiff failed to state viable claims for verbal abuse, harassment, deprivation of due process, and malicious abuse of process, and accordingly *sua sponte* dismissed such claims from the action. Dkt. No. 6 at pp. 7-9. He further dismissed Defendants Schenectady County Jail and Schenectady County Sheriff's Department because each were "administrative arms of [Schenectady] County" and because each lacked its own legal identity. *Id*. at pp. 6-7. The County of Schenectady remains a Defendant in this action.

response to that Motion was due on or before November 19, 2012. Within their Notice of Motion, Defendants warned Plaintiff of the need for him to respond to the Motion and not to simply rely upon his Complaint. *Id*. at p. 2. Similarly, the Clerk of the Court sent Plaintiff a notice informing him of his deadline to respond and notifying him of the consequences that could occur should he fail to oppose Defendants' Motion. Dkt. No. 31.

On November 27, 2012, when no response from Plaintiff had been received, this Court issued an Order *sua sponte* extending Plaintiff's time to respond and further notifying him of the nature of a summary judgment motion and the consequences that could occur should he opt to not respond. Dkt. No. 34. To date, the Court has not received any response from Plaintiff. In fact, the last communication received from Plaintiff was over a year ago on December 22, 2011, when the Court received an undated Letter from Plaintiff notifying us of his new address.[7] Dkt. No. 9.

---

[7] In circumstances such as these where a significant amount of time has passed since a plaintiff last communicated with the Court, the Court would normally analyze whether that litigant had effectively abandoned his claim, or at least failed in his duty to prosecute, in accordance with the authority granted to this Court pursuant to Federal Rule of Civil Procedure 41(b) and the Court's inherent power to control its docket. *Link v. Wabash R. Co.*, 370 U.S. 626, 629–32 (1962); *see also Lindsey v. Loughlin*, 616 F. Supp. 449, 453 (E.D.N.Y. 1985) (citing *Link v. Wabash R. Co.* for the proposition that "[t]he authority of a court to dismiss *sua sponte* for lack of prosecution has generally been considered an 'inherent power,' governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases").

Not only has Plaintiff failed to communicate with the Court for over a year and defend against the Defendants' Motion, but it appears that he has not participated in the prosecution of this action since the time issue was joined. Despite the Court's Mandatory Pretrial Discovery and Scheduling Order, which imposes certain discovery be automatically exchanged by the parties, Defendants' counsel advises that "[n]o discovery was conducted by Plaintiff" in this case." Dkt. No. 29-2, Marc H. Goldberg, Esq., Decl., dated Oct. 19, 2012, at ¶ 5; *see also* Dkt. No. 20.

According to this District's Local Rules of Practice, a plaintiff's "failure to take action for four (4) months shall be presumptive evidence of lack of prosecution." N.D.N.Y.L.R. 41.2(a). Plaintiff's inaction in this case clearly evinces a failure to duly prosecute. *See id.*; *see also Shannon v. Gen. Elec. Co.*, 186 F.3d 186, 193 (2d Cir. 1999) (finding that the district court did not abuse its discretion in dismissing case due to party's failure to prosecute the action). Thus, the Court would be well within its discretion to recommend dismissal of this action based upon Plaintiff's failure to prosecute this matter and his apparent abandonment of his claims herein. Before making such a recommendation, it is this Court's practice to provide a plaintiff with notice of our intent to recommend dismissal due to his failure to prosecute and give him an opportunity to explain his inactivity. However, based upon our review of Defendants' Motion, it is clear that Plaintiff's Complaint should be dismissed with prejudice on the merits and providing Plaintiff with a further opportunity would only result in unnecessary delay of this matter.

## II.  DISCUSSION

### A.  Summary Judgment Standard of Review

Summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *accord F.D.I.C. v. Giammettei,* 34 F.3d 51, 54 (2d Cir. 1994).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999).  "When a motion for summary judgment is made and supported . . . an adverse party may not rest upon the mere allegations or denials of the . . . pleading, but the adverse party's response, by affidavits or as otherwise provided in [Federal Rule of Civil Procedure 56(e)], must set forth specific facts showing that there is a genuine issue for trial."  *St. Pierre v. Dyer*, 208 F.3d 394, 404 (2d Cir. 2000) (quoting FED. R. CIV. P. 56(e)).  "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir. 1994) (alteration and emphasis in original) (citation omitted).  However, it is well settled that on a motion for summary judgment, the court must construe the evidence in the light most favorable to the non-moving party.  *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999).

Furthermore, in a *pro se* case, the court must view the submissions by a more lenient standard than that accorded to "formal pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U .S. 519, 520-21 (1972); *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994) (a court is to read a *pro se* party's "supporting papers liberally, and . . . interpret them to raise the strongest arguments that they

suggest").  Indeed, the Second Circuit has stated that "[i]mplicit in the right to self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the non-moving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  This liberal standard, however, does not excuse a *pro se* litigant from following the procedural formalities of summary judgment.  *Showers v. Eastmond*, 2001 WL 527484, at *2 (S.D.N.Y. May 16, 2001).

Local Rule 7.1(a)(3) requires the non-movant to file a Statement of Material Facts that mirrors the movant's statement in matching numbered paragraphs and that sets forth a specific reference to the record where the material fact is alleged to arise.  N.D.N.Y.L.R. 7.1(a)(3).  More specifically, this Local Rule provides that "[t]he Court shall deem admitted any facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert." *Id.* (emphasis in original).  Courts of the Northern District have adhered to a strict application of Local Rule 7.1(a)(3)'s requirement on summary judgment motions.  *Giguere v. Racicot*, 2002 WL 368534, at *2 (N.D.N.Y. Mar. 1, 2002) (citing, *inter alia*, *Bundy Am. Corp. v. K-Z Rental Leasing, Inc.*, 2001 WL 237218, at *1 (N.D.N.Y. Mar. 9, 2001)).

Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the Court to conduct a search and independent review of the record to find proof of a factual dispute.  *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).  As long as the Local Rules impose a requirement that parties provide specific record citations in support of their statement of material facts, the court may grant summary judgment on that basis.  *Id.* at 470-71.

-5-

## B. Exhaustion of Administrative Remedies

Primarily, Defendants seek dismissal of this action due to Plaintiff's failure to exhaust his available administrative remedies as required by the Prison Litigation Reform Act of 1996 ("PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Because Plaintiff was not incarcerated at the time he brought this action, he is not considered to be a "prisoner" as contemplated by this section of the PLRA, and therefore, he need not have satisfied any exhaustion requirement of this provision prior to bringing this action. *Greig v. Goord*, 169 F.3d 165 (2d Cir. 1999). We therefore recommend **denying** Defendants' Motion for Summary Judgment on this basis.

## C. Plaintiff's Claims

The allegations contained in Plaintiff's Complaint are beyond vague. Generally, Plaintiff accuses all Defendants of harassing, teasing, and intimidating him because of his sexual orientation and that they subjected him to "harassing, sexually explicit, . . . offensive . . . ., denigrating, malicious, hurtful, and/or inappropriate comments." Compl. at ¶¶ 31 & 33. He further claims that he was constantly harassed by another inmate, William Banks, and that his repeated complaints to the Defendants about this inmate's "propensities, conduct, behavior, and threats" were ignored. *Id*. Plaintiff alleges that on December 30, 2009, Inmate Banks sexually assaulted him, and he accuses the Defendants of failing to provide a safe environment and failing to protect him from a known harm. *Id*. at ¶ 32. Plaintiff never provides any specific dates on which he complained to the Defendants about Inmate Banks, nor is there any specificity regarding which Defendant he

complained to. Likewise, there is no specificity in the pleading regarding which Defendant engaged in the complained behavior and when, nor what those comments were.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

As noted above, at no point in his Complaint does Plaintiff make <u>any</u> specific factual allegation against a single Defendant. Instead, he groups them all together with his general and vague accusations.

According to Defendants' Motion, many of the Defendants disclaim any recollection of ever conversing with Plaintiff and disavow the allegations that they made derogatory comments or in any way conducted themselves inappropriately or unprofessionally. *See* Dkt. No. 29-7, William Varrone Decl., dated Oct. 13, 2012, at ¶ 6 (no recollection of ever conversing with Plaintiff and never made derogatory comments); Dkt. No. 29-8, Donn LaBrake Decl., dated Oct. 13, 2012, at ¶ 6 (no recollection of having any contact with Plaintiff); Dkt. No. 29-9, Howard Jones Decl., dated Oct. 15, 2012 (no recollection of ever conversing with Plaintiff); Dkt. No. 29-10, Howard Jones, Decl., dated Oct. 2, 2012, at ¶ 6 (no recollection of ever conversing with Plaintiff and never made derogatory comments); Dkt. No. 29-11, Leslie Gemmette Decl., dated Oct. 3, 2012, at ¶ 7 (never

made derogatory comments about Plaintiff); Dkt. No. 29-12, Courtney Martin Decl., dated Sept. 2, 2012, at ¶ 5 (contact with Plaintiff was limited to her transporting him and other inmates to police court after which Plaintiff lodged accusations against her regarding excessive force, which was fully investigated and closed by the facility with no further action);[8] Dkt. No. 29-13, Todd Buffington Decl., dated Oct. 2, 2012, at ¶ 9 (never made derogatory comments about Plaintiff); Dkt. No. 29-14, William Coonradt Decl., dated Oct. 9, 2012, at ¶ 8 (never made derogatory comments about Plaintiff); Dkt. No. 29-15, Tanya Hull Decl., dated Oct. 2, 2012, at ¶ 6 (never made derogatory comments about Plaintiff).

Furthermore, there are a handful of Defendants who never worked on the floor where Plaintiff was housed, and others who were not working at the facility on the date the incident with Inmate Banks allegedly occurred. Jones Decl. at ¶ 7 (was not working at time of the alleged incident between Plaintiff and Inmate Banks); Schmidt Decl. at ¶ 4 (did not work on the floor where Plaintiff was housed); Martin Decl. at ¶ 7 (same); Buffington Decl. at ¶ 7 (same); Coonradt Decl. at ¶ 9 (was not working on the day of the incident with Inmate Banks); Hull Decl. at ¶ 12 (did not work on the floor where Plaintiff was housed).

And, none of the Defendants recall specific requests from Plaintiff for protection from Inmate Banks. Varrone Decl. at ¶ 9 (never made aware of problems with Inmate Banks); LaBrake Decl. at ¶¶ 7 & 15 (same); Jones Decl. at ¶ 7 (same); Schmidt Decl. at ¶ 4 (same); Gemmette Decl. at ¶¶ 8, 13, & 17 (never made aware of problems with Inmate Banks and was notified by Plaintiff about the incident after it occurred); Martin Decl. at ¶ 7 (never made aware of problems with Inmate

---

[8] The Complaint does not contain a specific allegation against Defendant Martin regarding any incident occurring during a transport in July 2009. This incident was apparently raised at the 50-h hearing conducted in State court. Martin Decl. at ¶ 4.

Banks); Buffington Decl. at ¶ 7 (same); Coonradt Decl. at ¶ 9 (same); Hull Decl. at ¶ 13 (same).

Based upon the uncontroverted evidence provided by Defendants, it appears that Plaintiff had personal confrontations with only three Defendants: Leslie Gemmette, Courtney Martin, and Tanya Hull. Neither Defendants Martin nor Hull worked on the same floor where Plaintiff was housed and neither had any knowledge of problems Plaintiff may have had with other inmates. Martin Decl. at ¶ 7; Hull Decl. at ¶¶ 12–13. The only Defendant who appears to have any nexus to the incident with Inmate Banks is Defendant Gemmette, who was on duty at the time of the incident. The Court will briefly address the interactions Plaintiff had with Defendants Martin, Hull, and Gemmette.

Defendant Martin's contact with Plaintiff was limited to her transporting him and other inmates to police court in July 2009, six months prior to the alleged incident with Inmate Banks. Thereafter, Plaintiff accused Martin of using excessive force against him by slamming him into a wall. These accusations were fully investigated and closed by the facility with no further action taken. Martin Decl. at ¶ 5. This interaction is not mentioned nor referenced in the Complaint, and, as noted above, the Complaint is devoid of any specific allegation against Defendant Martin.

Next we address the two confrontations Plaintiff had with Defendant Hull, one in July 2009, six months prior to the Inmate Banks incident, and one in January 2010, after the Banks incident occurred. Regarding the July 2009 interaction, Plaintiff complained to Defendant Hull about his commissary sheet. When she tried to help him, he became argumentative at which point Defendant Hull instructed Plaintiff to return to his cell. He did not comply and instead screamed obscenities and derogatory comments at her. Following that incident, Defendant Hull authored an inmate misbehavior report charging Plaintiff with several rule violations. Hull Decl. at ¶ 7 & Ex. A. The

January 2010 interaction occurred when Plaintiff was being transported for visitation. After Plaintiff talked out of turn and got in Defendant Hull's face, another officer stepped in and restrained Plaintiff; Plaintiff responded by calling Defendant Hull a derogatory name. This incident also resulted with a misbehavior report issued against Plaintiff. *Id*. at ¶ 8 & Ex. B. Hull avows that she always conducted herself professionally, never made derogatory comments about Plaintiff, and was unaware of his sexual orientation. *Id*. at ¶¶ 6 & 11. She further avers that she did not work on the floor where Plaintiff was housed and was never made aware of any problems or concerns he had with other inmates. *Id*. at ¶¶ 12 & 13.

Lastly, we address Plaintiff's interaction with Defendant Gemmette, who was the only Defendant working where Plaintiff was housed and was on duty on the date of the alleged altercation with Inmate Banks. According to Defendant Gemmette, Plaintiff had been moved several times during his incarceration because of complaints he made about other inmates. Gemmette Decl. at ¶ 10. However, she never had any specific knowledge prior to the incident that Plaintiff was in danger or had any problems with Inmate Banks. *Id*. at ¶¶ 8 & 17. On December 30, 2009, the date of the incident, Defendant Gemmette came back from rounds and was notified that Plaintiff was having difficulty breathing and needed to go to medical. When she approached Plaintiff, he asked to speak with her privately and, once alone, explained what had transpired with Inmate Banks.[9] She had not heard any commotion during her rounds and no one had asked her for her help. Defendant Gemmette immediately locked Plaintiff in his cell and notified a sergeant of the problem; the incident was also entered into the log book. The sergeant moved Inmate Banks to another cell and took Plaintiff to medical. *Id*. at ¶¶ 12–15. Gemmette asserts that Plaintiff had discussed his sexual

---

[9] According to Defendant Gemmette, Plaintiff told her that when he got out of the shower and returned to his cell, Inmate Banks followed him into his cell and masturbated on his back. Gemmette Decl. at ¶ 12.

orientation with her, but she never made derogatory comments to him and never had any knowledge that Plaintiff was in danger or had problems with Inmate Banks.

In light of the vague accusations in the Complaint, which are devoid of any specific allegation of personal involvement of any wrongdoing by any Defendant, and in consideration of all the evidence submitted by Defendants, we find that Plaintiff has failed to show entitlement to relief on any of the purported claims in his Complaint and accordingly recommend that Defendants' Motion for Summary Judgment be **granted**.

### D. Doe Defendants

In his Original Complaint, filed on June 27, 2011, Plaintiff named ten John Does and two Jane Does as Defendants. Thereafter, Plaintiff identified eight of the John Does and one of the Jane Does. To date, Plaintiff has failed to identify John Doe #8, John Doe #9, and Jane Doe #1. Under FED. R. CIV. P. 4(c)(1), the plaintiff is responsible for service of the summons and complaint for each defendant within a specified time period. Specifically, the plaintiff must effectuate service of process within 120 days of the filing of the complaint. FED. R. CIV. P. 4(m).[10] Failure to properly serve any defendant in accordance with the Federal Rules will result in the court, upon motion or on its own initiative, to dismiss the case without prejudice as to that defendant. *Id.*

Plaintiff was previously warned that the Marshal's Service could not effect service on a "Doe" Defendant and that he had to take steps to identify these individuals in order to avoid dismissal of his action against them. Dkt. No. 6 at pp. 10–11. Because Plaintiff failed to timely identify and serve the John/Jane Doe Defendants, and because as outlined above, no cognizable cause of action is asserted herein, we recommend dismissal of all claims asserted against them.

---

[10] Under the Local Rules for the Northern District of New York, a plaintiff must effectuate service within sixty (60) days. N.D.N.Y.L.R. 4.1(b).

*Cooks v. Delpiano*, 2008 WL 4186337, at *1, n.1 (N.D.N.Y. Sept. 10, 2008); *Pravda v. City of Albany*, 178 F.R.D. 25, 26 (N.D.N.Y. 1998).

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that John Doe #8, John Doe #9, and Jane Doe #1 be **DISMISSED** from this action due to Plaintiff's failure to timely identify and serve them in accordance with Federal Rule of Civil Procedure 4(m); and it is further

**RECOMMENDED**, that Defendants' unopposed Motion for Summary Judgment (Dkt. No. 29) be **GRANTED** and this entire case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72 & 6(a).

Date:   May 24, 2013
        Albany, New York

Randolph F. Treece
U.S. Magistrate Judge